IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Latisha Burns,<br><br>        Plaintiff,<br><br>vs.<br><br>Trans Union, LLC, et al.,<br><br>        Defendants. | Case No.: 4:18-cv-03120-MGL |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS BY WAREHOUSE HOME FURNISHINGS DISTRIBUTORS, INC.**

NOW COMES the Plaintiff, LATISHA BURNS, by and through her counsel, and responds to Warehouse Home Furnishings Distributors, Inc.'s ("Warehouse") motion to dismiss as follows:

**INTRODUCTION**

This lawsuit arises from the continued reporting of scheduled monthly payment amounts for closed and charged off accounts, despite Plaintiff's disputes of the respective trade lines. In its motion to dismiss, Warehouse argues that (1) Plaintiff failed to show that reporting a $215 scheduled monthly payment amount for her closed account is inaccurate and (2) Plaintiff failed to sufficiently plead her damages. However, Plaintiff clearly alleged that she does not owe a scheduled monthly payment obligation to Warehouse, as the account is closed. In addition, the

1

Credit Reporting Resource Guide, which is the industry standard for credit reporting, required Warehouse to report the scheduled monthly payment amount as zero after Plaintiff paid the account Warehouse closed it.  Accordingly, Plaintiff properly pled that Warehouse violated the Fair Credit Reporting Act ("FCRA") by failing to correct the reporting of the scheduled monthly payment obligation by Plaintiff to $0 in response to her dispute.  Furthermore, Plaintiff pled her damages that resulted from Warehouse's violation.  Therefore, Plaintiff requests this Court to deny Warehouse's motion to dismiss.

## STATEMENT OF FACTS

Warehouse is reporting its trade line with a monthly scheduled payment of $70.00.  (Doc #10, ¶ 9.)  The account reflected in Warehouse's trade line ("the account") was closed and charged off.  (Doc #10, ¶ 10.)  Warehouse accelerated the payment schedule and closed the account.  (Doc #10, ¶ 10.)  Plaintiff no longer has an obligation to make monthly payments to Warehouse.  (Doc #1, ¶ 10.)

On May 1, 2018, Plaintiff obtained her Trans Union credit disclosure and noticed that Warehouse's trade line for Plaintiff ("the Warehouse trade line") was reporting inaccurately with an erroneous scheduled monthly payment of $70.00. (Doc #10, ¶ 11.)  On or about August 8, 2018, Plaintiff submitted letters to Equifax and Trans Union disputing the Warehouse trade line. (Doc #10, ¶ 12.)  In her dispute letters, Plaintiff explained that the account was closed and she no longer had an

obligation to make monthly payments to Warehouse. (Doc #10, ¶ 13.) Plaintiff asked Equifax and Trans Union to report the scheduled monthly payment amount as $0. (Doc #10, ¶ 14.) Equifax and Trans Union forwarded Plaintiff's dispute to Warehouse. (Doc #10, ¶ 15.) On August 29, 2018 and September 11, 2018, respectively, Plaintiff received Trans Union's and Equifax's investigation results, which showed that Trans Union, Equifax and Warehouse failed or refused to report the scheduled monthly payment as $0 on the Warehouse trade line. (Doc #10, ¶¶ 16, 17.)

Warehouse failed to conduct a proper investigation of Plaintiff's dispute. (Doc #10, ¶¶ 32, 39.) Warehouse also failed to review all relevant information available to it and provided by Equifax and Trans Union. (Doc #10, ¶¶ 33, 40.) The Warehouse trade line is inaccurate and creates a misleading impression in Plaintiff's credit files with Equifax and Trans Union. (Doc #10, ¶ 34.)

As a direct and proximate cause of Defendants' failures to comply with the FCRA, Plaintiff has suffered credit and emotional damages. (Doc #10, ¶ 18.) Plaintiff has also experienced undue stress and anxiety due to Defendants' failures to correct the errors in her credit file or improve her financial situation by obtaining new or more favorable credit terms as a result of the Defendants' violations of the FCRA. (Doc #10, ¶ 18.) Moreover, Plaintiff has suffered mental anguish, suffering,

humiliation and embarrassment as a result of Warehouse's violations of the FCRA. (Doc #10, ¶¶ 35, 41.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009), quoting *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. 663. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*., at 664.

## LAW & ARGUMENT

### 1. **Plaintiff sufficiently pled that Warehouse inaccurately reported a positive monthly payment obligation**

First, Warehouse states that "Plaintiff alleges nothing about the terms of her obligation to [Warehouse] except that she 'no longer has an obligation to make monthly payments.'" (Doc #33-1, p. 4, quoting Doc #10, ¶ 10.) Plaintiff agrees with Warehouse. The end of Plaintiff's obligation to make monthly payments to Warehouse is why Warehouse's continued reporting of a $70.00 scheduled monthly payment amount is inaccurate. Plaintiff does not need to make allegations about any

4

other terms of her (former) obligation to Warehouse to demonstrate why Warehouse's continued reporting of the scheduled monthly payment amount is inaccurate. (Doc #10, ¶¶ 9-10.)

In addition, Warehouse was required to conduct a proper investigation of Plaintiff's dispute about the scheduled monthly payment amount and review all relevant information available to it. 15 U.S.C. § 1681s-2(b)(1)(A), (B). The Credit Reporting Resource Guide, which is the industry standard for credit reporting, required Warehouse to report the charged off and closed account with a scheduled monthly payment amount of $0. (Exhibit 1.)

Plaintiff informed Warehouse (via Equifax and Trans Union) that the account was closed and that she no longer had an obligation to make monthly payments. (Doc #10, ¶¶ 12-15.) Of course, Warehouse already knew that before it received Plaintiff's dispute, because Warehouse had been reporting the account as charged off and closed. (Doc #10, ¶ 11.) Therefore, upon receiving Plaintiff's dispute from Equifax and Trans Union, Warehouse merely needed to review Plaintiff's dispute letter, review its records to determine that Plaintiff's dispute letter was accurate, review the credit reporting standards (Exhibit 1), and then correct its reporting of the scheduled monthly payment amount to $0. Warehouse's failure to do so violated 15 U.S.C. § 1681s-2(b) of the FCRA.

Warehouse also states that Plaintiff does not "provide any information [Warehouse] furnished to Equifax and Trans Union other than accurately reporting scheduled monthly payments." (Doc #33-1, p. 4.) Plaintiff denies that Warehouse accurately reported the scheduled monthly payment amount to Equifax and Trans Union after the account was charged off and closed; that is the crux of Plaintiff's dispute.

Moreover, to the extent that Warehouse implies that Plaintiff must allege the details of Warehouse's communications to Equifax or Trans Union, Warehouse seeks this Court to impose an impossible pleading standard, as Plaintiff cannot know the communications between Warehouse and the consumer reporting agencies until Plaintiff engages in discovery. Likewise, Plaintiff cannot know Warehouse's investigative procedures until Plaintiff engages in discovery. Requiring a consumer to know and plead specific facts regarding the communications between a consumer reporting agency and a furnisher or the details of a furnisher's investigative practices would prevent any consumer from filing any lawsuit under the FCRA, as virtually no consumer would or could know such facts before engaging in discovery. These matters are classic matters for discovery in FCRA cases.

Therefore, Warehouse's motion to dismiss should be denied.

2. ***Jackson*, not *Keith*, is most similar to the instant case**

    a. ***Keith* is distinguishable from the instant case**

Warehouse also cites *Keith v. Equifax Info. Servs., LLC*, No. 18-cv-00121, 2019 WL 510446 (M.D. Ga. Feb. 8, 2019) and argues that this Court should dismiss Plaintiff's complaint for the reasons stated in *Keith*. However, *Keith* is distinguishable from the instant case for two major reasons.

First, in *Keith*, the court primarily found that the plaintiff failed "to adequately allege [the defendant] received proper written notice of the dispute about the accuracy of the credit report" because Plaintiff alleged that notice was provided "upon information and belief." *Id*. at *3. In the instant case, however, Plaintiff does not allege notice "upon information and belief." Rather, Plaintiff alleges that "Trans Union and Equifax forwarded Plaintiff's consumer dispute to [Warehouse]." (Doc #10, ¶ 15.) Plaintiff further alleges that "[a]fter being informed by Trans Union and Equifax of Plaintiff's consumer dispute of the scheduled monthly payment," Warehouse failed to conduct a proper investigation of Plaintiff's dispute. (Doc #10, ¶¶ 32, 39.) Therefore, the basis for the holding in *Keith* does not exist in the instant case.

Second, the plaintiff in *Keith* did not file an opposition to the defendant's motion to dismiss, so the Court did not consider any arguments in opposition to the motion (including the foregoing arguments). *Keith*, 2019 WL 510446 at *1. Warehouse seeks to hold Plaintiff to a higher pleading standard than required by Fed. R. Civ. P. 8(a), *Twombly*, *Iqbal* and their progeny. To satisfy her pleading

7

requirements, Plaintiff merely must plead sufficient facts to state a plausible claim for relief, *Iqbal, supra*, which Plaintiff did. Plaintiff does not need to plead facts with particularity, because Plaintiff does not allege fraud, mistake, special damages, or any other matter that requires pleading facts with particularity. Fed. R. Civ. P. 9(b), (g).

      b.    *Jackson*

In a more recent opinion from the Middle District of Georgia than *Keith*, the court dismissed similar arguments to those made by Warehouse. In *Jackson v. Equifax Info. Servs., LLC*, No. 18-cv-00271, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019), the allegations by the plaintiff are nearly identical to those of the instant case. *Id.* at *1-2. Ultimately, the court held that "the Court finds that Plaintiff has alleged sufficient facts to raise a plausible claim that the Trans Union credit disclosure was materially misleading." *Id.* at *4. "Specifically, the Court finds that it is plausible that the monthly payment trade line could materially mislead a prospective lender about the nature of Plaintiff's obligation to make payments on this account . . . ." *Id.*

Here, as in *Jackson*, Plaintiff alleged that Warehouse's reporting of the scheduled monthly payment amount "is inaccurate and creates misleading impression" in Plaintiff's credit files. (Doc #10, ¶ 34.) In addition, regardless of whether a lender would be misled, Plaintiff alleges that the reporting of the positive scheduled monthly payment amount affects her ability to obtain credit, because of

8

the effect on his credit score by reporting a positive scheduled monthly payment obligation. (Doc #10, ¶ 18.) Therefore, Plaintiff has properly pled the inaccuracy in the Warehouse trade line. Accordingly, Warehouse's motion to dismiss should be denied.

### 3. Plaintiff has standing to bring her claims against Warehouse

Warehouse also argues that Plaintiff lacks standing to bring her claims against Warehouse because she allegedly did not suffer a concrete injury. (Doc #33-1, p. 6.) However, as discussed above, Plaintiff has pled emotional distress as a result of Warehouse's violations of the FCRA. (Doc #10, ¶¶ 18, 35, 41.) Plaintiff's emotional distress constitutes an injury for which relief can be granted. "[D]amages for mental distress are recoverable under the FCRA, even if the consumer has suffered no out-of-pocket losses." *Moore v. Equifax Info. Servs., LLC*, 333 F. Supp. 2d 1360, 1365 (N.D. Ga. 2004). In addition, Warehouse's violations by themselves are sufficient to confer standing upon Plaintiff. Therefore, Plaintiff has standing to maintain her claims against Warehouse.

#### a. Plaintiff has sufficiently pled injuries sufficient to confer standing

First, as discussed above, Plaintiff has clearly alleged concrete injuries resulting from Warehouse's violations of the FCRA. Plaintiff has alleged that she "has suffered credit and emotional damages" and "has also experienced undue stress and anxiety due to Defendants' failure to correct the errors in his credit file." (Doc

9

#10, ¶ 18.) Plaintiff has further alleged that "[a]s direct and proximate cause of [Warehouse's]" violations of the FCRA, she "has suffered damages, mental anguish and suffering, humiliation, and embarrassment." (Doc #10, ¶¶ 35, 41.) Therefore, Plaintiff has clearly pled injuries sufficient to establish standing.

### b. Warehouse's violations alone are sufficient to confer standing upon Plaintiff

Second, and in any event, Warehouse's violations of the FCRA are sufficient to establish an injury-in-fact and thus confer standing upon Plaintiff. "[W]hile [the plaintiff] may not show an injury-in-fact merely by pointing to a statutory cause of action, the Supreme Court also recognized that *some* statutory violations, alone, do establish concrete harm." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (italics in original) ("*Spokeo III*"). Moreover, "an alleged procedural violation [of a statute] can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents 'a risk of real harm' to that concrete interest." *Spokeo III*, 867 F.3d at 1113.

In *Spokeo III*, the Ninth Circuit was required to determine whether the plaintiff had standing to pursue his Section 1681e(b) claim against a consumer reporting agency. "In evaluating [the plaintiff's] claim of harm, we thus ask: (1) whether the statutory provisions at issue were established to protect his concrete interests (as

opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Spokeo III*, 867 F.3d at 1113.

### i. The FCRA provisions at issue were established to protect Plaintiff's concrete interests

As to the first issue, the Ninth Circuit held that "Congress established the FCRA provisions at issue to protect consumers' concrete interests." *Spokeo III*, 867 F.3d at 1113.

> [I]t makes sense that Congress might choose to protect against such harms without requiring any additional showing of injury. The threat to a consumer's livelihood is caused by the very existence of inaccurate information in his credit report and the likelihood that such information will be important to one of the many entities who make use of such reports. Congress could have seen fit to guard against that threat (and, for example, against the uncertainty and stress it could cause to the consumer's life), especially in light of the difficulty the consumer might have in learning exactly who has accessed (or who will access) his credit report.

*Spokeo III*, 867 F.3d at 1114.

The Ninth Circuit in *Spokeo III* has already held that Section 1681e(b) was established to protect consumers' concrete interests. *Spokeo III, supra.* For the same reasons that the Ninth Circuit stated for Section 1681e(b), Section 1681s-2(b) was also established to protect consumers' concrete interests. Therefore, the FCRA provisions at issue in the instant case were established to protect Plaintiff's concrete interests.

11

### ii. The specific violations alleged against Warehouse actually harm, or present a material risk of harm, to such interests

In *Spokeo III*, the Ninth Circuit also had to "determine whether Robins has alleged FCRA violations that actually harm, or at least that actually create a "material risk of harm" to, this concrete interest." *Spokeo III*, 867 F.3d at 1115. The Ninth Circuit held that this analysis "requires some examination of the *nature* of the specific alleged reporting inaccuracies to ensure that they raise a real risk of harm to the concrete interests that FCRA protects." *Spokeo III*, 867 F.3d at 1116. Ultimately, the Ninth Circuit held that "[the plaintiff's] allegations relate facts that are substantially more likely to harm his concrete interests than the Supreme Court's example of an incorrect zip code [an example given the by the United States Supreme Court as a harmless inaccuracy]" and held that the plaintiff sufficiently alleged that he suffered a concrete injury. *Spokeo III*, 867 F.3d at 1117 (brackets added).

Here, too, Plaintiff alleges fact that are substantially likely to harm his concrete interests more than an erroneous zip code. Whether or not an account is reporting a scheduled monthly payment amount is significant. Whether a consumer has an obligation to make scheduled monthly payments toward an account affects the consumer's credit score and has a clear effect on the risk associated with extending credit to the consumer. Any user of Plaintiff's Equifax or Trans Union

12

consumer reports would receive a clear misrepresentation about the Warehouse trade line. This is one of the primary purposes of ensuring that credit reporting agencies report accurate information about consumers. "Ensuring the accuracy of this sort of information . . . seems directly and substantially related to FCRA's goals." *Spokeo III*, 867 F.3d at 1117.

Thus, even if Plaintiff had not pled an injury aside from the violation of the FCRA itself (and Plaintiff has pled such injuries), Plaintiff's allegations that Warehouse violated 15 U.S.C. § 1681s-2(b) are sufficient to confer standing upon Plaintiff to bring her claims against Warehouse. Arguments nearly identical to those made by Warehouse have been recently addressed and rejected by other courts. *Hamm v. Equifax Info. Servs., LLC*, No. 17-cv-03821-PHX-JJT, 2018 WL 3548759, at *2 (D. Ariz. July 24, 2018); *Wheeler v. Trans Union, LLC*, No. 17-cv-03328, 2018 WL 2431876, at *2 (D. Ariz. May 30, 2018). Therefore, Warehouse's motion should be denied.

In support of its argument that Plaintiff has not suffered an injury sufficient to establish standing, Warehouse argues that Plaintiff has not sustained actual damages. (Doc #33-1, p. 7.) Warehouse confuses injury-in-fact with actual damages. *Spokeo, supra*.

In any event, Plaintiff has sustained actual damages. Plaintiff plainly pled that she suffered credit and emotional damages as a direct and proximate cause of

13

Warehouse's violations of the FCRA. (Doc #10, ¶ 18.) Plaintiff further pled that she suffered undue stress and anxiety due to Warehouse's failure to correct the error in her credit file. (Doc #10, ¶ 18.) Plaintiff further pled that as a direct and proximate cause of Warehouse's violations of the FCRA, she suffered mental anguish, suffering, humiliation and embarrassment. (Doc #10, ¶¶ 35, 41.) These are clearly allegations of causation and damages.

Furthermore, Plaintiff does not need to plead her damages (or any other allegations) with particularity, because Plaintiff does not allege fraud, mistake, special damages, or any other matter that requires pleading facts with particularity. Fed. R. Civ. P. 9(b), (g). Plaintiff only needs to plead sufficient facts to support a plausible claim for relief, *Iqbal, supra*, which Plaintiff has done. Therefore, Plaintiff has standing to bring her claims against Defendant and Defendant's motion should be denied.

### 4.     **If necessary, Plaintiff should be permitted to amend her complaint**

Plaintiff believes that she clearly pled sufficient facts to state a claim for relief against Warehouse. However, if this Court determines that Plaintiff failed to plead sufficient facts, Plaintiff requests this Court to grant leave for her to amend the complaint to do so.

Leave to amend the complaint should be freely given. Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a).

Here, none of the factors for denying leave to amend are present. Although Plaintiff claims actual damages against Warehouse in the form of economic and emotional damages, Plaintiff believes she does not need to plead such damages with particularity to survive a motion to dismiss. However, if this Court determines that Plaintiff did not sufficiently support her claims, Plaintiff requests this Court to permit her to amend the complaint to plead more specific facts.

## CONCLUSION

For the foregoing reasons, Plaintiff requests this Court to deny Warehouse's motion to dismiss.

DATED: April 17, 2019

By: */s/ Aaron Kozloski*
Aaron J. Kozloski, Esq.,
Fed. ID No. 9510
Capitol Counsel, LLC
P.O. Box 1996
Lexington, SC  29071
Tel: (803) 465-1400

15

Fax: (803) 513-6021
Email – aaron@capitolcounsel.us
*Attorneys for Plaintiff*

*Of Counsel to:*

Credit Repair Lawyers of America
22142 West Nine Mile Road
Southfield, MI  48033
Tel: (248) 353-2882
Fax: (248) 353-4840
www.creditrepairlawyersam.com